DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Criminal Case No. 09-00025 |
| Plaintiff, | |
| vs. | **Opinion and Order re: Motion to Dismiss the Indictment** |
| **DENNIS CHARLES PEREZ**, | |
| Defendant. | |

Before this court is the Defendant's Motion to Dismiss the Indictment filed on April 8, 2011, which was amended on April 11, 2011. Docket Nos. 114 and 116. Therein, the Defendant seeks the dismissal of the indictment because of an alleged speedy trial violation under 18 U.S.C. § 3161. For the reasons set forth herein, the court **GRANTS** the motion to dismiss the indictment with prejudice.

## I. BACKGROUND

On May 13, 2009, Dennis Charles Perez ("the Defendant") was indicted for Possession With Intent to Distribute Methamphetamine. *See* Docket No. 6. On June 10, 2009, a superseding indictment was filed which charged the Defendant with Attempted Possession With Intent to Distribute Methamphetamine and an additional charge of Conspiracy to Distribute Methamphetamine. *See* Docket 19. On March 16, 2011, the Government filed a second superseding indictment, charging the same offenses but changing a date in the conspiracy charge. *See* Docket No. 101. Since the filing of the initial indictment and the subsequent superseding indictment, the procedural history of this case has been convoluted. There have

been meritorious challenges made to the underlying search warrants, the filing of motions to suppress and a change of Government counsel. These factors, among others, have led to the Defendant's motion before this court. The Defendant now argues that the case be dismissed with prejudice because his right to a speedy trial has been violated.

**II. DISCUSSION**

"The Speedy Trial Act . . . commands that a defendant be tried within 70 days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate." *Henderson v. United States*, 476 U.S. 321, 322 (1986); 18 U.S.C. § 3161(c)(1). Where a trial is delayed for more than seventy days, and the cause of the delay does not fall within an exclusion specified in 18 U.S.C. § 3161(h), an indictment must be dismissed. *See Zedner v. United States,* 547 U.S. 489, 499 (2006) ("If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice."). Here, both of the parties agree that 98 non-excludable days have run from the time the Defendant was arraigned until he filed the motion to dismiss. *See* Docket Nos. 116 and 118. They agree that the Defendant should have gone to trial 28 days before the motion to dismiss under the Speedy Trial Act ("Act") was filed.

Based on its own calculations, the court finds that 110 non-excludable days have run since the Defendant made his first appearance on May 15, 2009. The Speedy Trial Act clock began to run on May 16, 2009. *See* 18 U.S.C. § 3161(c)(1) (stating that the clock begins at the later date of initial appearance or filing of the indictment). The clock was tolled on May 21, 2009, (**5 days elapsed**) when a substitution of attorneys was filed. *See* Docket No. 12. The clock remained tolled through May 26, 2009, when the substitution was granted. *See* Docket No. 13. The clock ran from May 27, 2009 to May 28, 2009, (**2 days elapsed**) and was again tolled when the Defendant filed a motion for release on May 29, 2009 which was denied on June 5, 2009. *See* Docket Nos. 14 and 18. The clock resumed running from June 6, 2009 until June 12, 2009 when the Defendant made an initial appearance to a superseding indictment (**6 days elapsed**).

*See* Docket Nos. 19 and 23. The clock again ran from June 13, 2009 through June 15, 2009, and was tolled on June 16, 2009 when the Defendant filed a first motion to suppress and a second motion to suppress (**3 days elapsed**). *See* Docket Nos. 24 and 26. The briefing on the two motions was completed on July 6, 2009. *See* Docket No. 30. On July 7, 2009, this court referred the two motions to the Magistrate Judge to issue a report and recommendation. *See* Docket No. 31.

The evidentiary hearing on the motions was held on October 21, 2009 before the Magistrate Judge. *See* Docket No. 48. The Magistrate Judge took the matter under advisement. Pursuant to 18 U.S.C. § 3161(h)(1)(H) the Magistrate Judge should have issued his report and recommendation within 30 days thereafter, by November 20, 2010. *See* 18 U.S.C. § 3161(h)(1)(H) ("delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."). However, the Magistrate Judge's report and recommendation was not filed until January 5, 2010, seventy-five days after he took the matter under advisement. *See* Docket No. 49. Accordingly, an additional **45 days elapsed** under the Speedy Trial Act clock (seventy-five less thirty days).

On January 15, 2010, the Defendant filed a stipulation with the Government requesting an extension of time (until January 29, 2010) to file his objections to the report and recommendation. *See* Docket No. 51. Thereafter, on January 28, 2010, the Defendant filed another stipulation with the Government requesting an extension of time to file his objections (until March 12, 2010). *See* Docket No. 54. On March 8, 2010, the Defendant filed his objections to the report and recommendation. *See* Docket No. 56. The briefing on the objections was completed by April 27, 2010 and the matter was set for a hearing on June 10, 2010. See Docket Nos. 58, 61 and 64. At the June hearing, instead of addressing the merits of the objections, the Government attorney, Mr. Gerald Henderson ("AUSA Henderson"), raised a question concerning the preparations of the warrants. Rather than continue with the hearing, the court instructed AUSA Henderson to speak to his office as to how to proceed. Thereafter, on June 25, 2010, the parties filed a stipulation agreeing that the evidence sought to be suppressed under the Defendant's two motions to suppress was inadmissible. *See* Docket No. 68.

On July 1, 2010, the Government filed a motion to allow the testimony of witness Martin Pablo. *See* Docket No. 70. After additional briefing on the motion and continued hearings, the court concluded its hearing on the motion on January 6, 2011. The Government filed a post hearing brief on January 7, 2011. Docket No. 94. On January 10, 2011, the Defendant filed a request for a two-week extension to file a reply to the Government's January 7, 2011 brief. Docket No. 95. Instead of granting the request, the court issued its Order on the motion on February 25, 2011. *See* Docket No. 96. Sixteen days (**16 days elapsed)** ran from the Defendant's January 10, 2011 request of an extension of time until February 25, 2011, when the court issued its order. The clock resumed running on February 26, 2011 and was again tolled on March 18, 2011, when the Defendant made an initial appearance to a second superseding indictment (**20 days elapsed**). *See* Docket Nos. 101 and 104. The clock resumed running on March 19, 2011 and was again tolled on**.** March 23, 2011, when the Defendant filed a stipulation to continue the pretrial conference, which was granted by the court on March 24, 2011, (**4 days elapsed)**. *See* Docket Nos. 105 and 106. The clock ran from March 25, 2011, through March 28, 2011, when the Defendant filed a motion for reconsideration (**3 days elapsed**). *See* Docket No. 108. The court issued its decision on April 1, 2011, denying the motion for reconsideration. *See* Docket No. 112. Finally, the clock ran from April 2, 2011 through April 7, 2011 (**6 days elapsed**), until April 8, 2011, when the Defendant filed the motion which is now before the court.[1]

---

[1] Clearly from the court's own calculations there is a Speedy Trial Act violation. The court believes that there may have been some confusion concerning whether the Magistrate Judge was required to issue his Report and Recommendation within 30 days after taking the motions to suppress under advisement. *See* 18 U.S.C. § 3161(h)(1)(H). Although it appears there is no Ninth Circuit case on the issue, courts that have considered the issue have held that a Magistrate Judge who takes a motion under advisement is subject to the 30 days "under advisement" limit of 18 U.S.C. § 3161(h)(1)(H). *United States v. Harris*, 566 F.3d 422, 430 (5th Cir. 2009), *cert. denied,* 130 S. Ct. 1687 (2010); *United States v. Long*, 900 F.2d 1270, 1274-75 (8th Cir. 1990); *United States v. Mora*, 135 F.3d 1351, 1356-57 (10th Cir. 1998). This court agrees with those opinions, finding that the purposes of the Speedy Trial Act are more likely given effect by such an interpretation. In addition, the court understands its responsibility in ensuring the Speedy Trial Act is not violated and shares the blame in this case for the delay.

Because of the Speedy Trial Act violation, the Defendant now seeks dismissal of this case with prejudice. The Government agrees the case should be dismissed, but argues that dismissal should be without prejudice. The court has discretion to dismiss the case with or without prejudice. *United States v. Engstrom*, 7 F.3d 1423, 1427 (9th Cir. 1993). A trial court's decision whether to dismiss with or without prejudice is reviewed for abuse of discretion. *United States v. Taylor*, 487 U.S. 326, 334 (1988) ("Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation."); *see also United States v. Lewis*, 518 F.3d 1171, 1176 (9th Cir. 2010) ("The statute does not prefer one remedy to the other.").

On a motion to dismiss, "[t]he defendant has the burden of proving that the delay meets the criteria for dismissal." *United States v. Medina*, 524 F.3d 974, 980 (9th Cir. 2008). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal, and the impact of reprosecution on the administration of the Act and the administration of justice." 18 U.S.C. § 3162(a)(2); *see also Taylor*, 487 U.S. at 336-37. "The Supreme Court has held that by the use of the phrase 'among others,' Congress intended prejudice to the defendant to be a fourth factor weighed by the district court." *Lewis*, 518 F.3d at 1176 (quoting *Taylor*, 487 U.S. at 333). The court will analyze each factor below.

### A. Seriousness of the Offense

First, the court must consider the seriousness of the charge. The seriousness of the charge is considered for purposes of weighing it against the seriousness of the delay and its effects. The Defendant is charged with attempted possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine. Because the Defendant has a prior conviction for a felony drug trafficking offense, he faces a mandatory minimum term of 10

---

Going forward the court has implemented internal procedures to assure this situation does not occur again.

years and up to life incarceration. *See* Docket No. 79. The Ninth Circuit has not explicitly defined "seriousness," but has found that a conspiracy to distribute and aiding and abetting the manufacture of controlled substance "are undoubtedly" serious crimes. *United States v. Clymer*, 25 F.3d 824, 831 (9th Cir. 1994); *also United States v. Lewis*, 611 F.3d 1172, 1180 (9th Cir. 2010) (affirming dismissal without prejudice because offenses carrying a maximum sentence of five years are serious within the context of the Speedy Trial Act.

Here, the charges are sufficiently serious to weigh heavily in favor of dismissal without prejudice. In fact, the Defendant has raised no argument to the contrary. However, seriousness of the offense is not dispositive of the speedy trial issue. It must be weighed against the "seriousness of the delay" and the other statutory factors. *Clymer*, 25 F.3d at 831.

### B. Facts and Circumstances Leading to the Violation of the Speedy Trial Act

Next, the court must evaluate the facts and circumstances that led to the delay. The Supreme Court has held that the length of delay is a relevant consideration in determining whether to dismiss an indictment with or without prejudice. *Taylor*, 487 U.S. at 340. The Ninth Circuit recognized that "the sheer length of the period involved" can weigh toward a dismissal with prejudice. *Clymer*, 25 F.3d at 831-32 (citation omitted). However, the length of delay must be weighed against its impact, "both in terms of the defendant's ability to prepare for trial" and in terms of "the restrictions on his liberty." *Clymer*, 25 F.3d at 832 (quoting *Taylor,* 487 U.S. at 340 ). The Defendant claims there is a serious delay justifying dismissal with prejudice.

While the Government agrees with the Defendant that twenty-eight[2] days of non-excludable delay is serious enough to support dismissal with prejudice, the Government insists that there is no evidence that the delay was a product of bad faith and therefore dismissal should be without prejudice. *See* Docket No. 118. However, in reaching its decision, the court need not make a finding of bad faith. The court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of

---

[2] The Government and Defendant assert that only 28 days have elapsed beyond the 70-day speedy trial clock. However, as noted previously herein, the court finds that the Act's 70-day period was actually exceeded by 40 days.

- 6 -

dilatory practices on the part of the United States Attorney's office in the district in question. *Taylor*, 487 U.S. at 338-39. Although the Government's negligence should weigh less heavily in Defendant's favor than does a deliberate delay, such negligence "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker v. Wingo*, 407 U.S. 514, 531 (1972).

Government counsel places blame, in part, on AUSA Henderson, the Defendant and the court.[3] She seemingly disclaims any responsibility in the matter. She states in her Affidavit:

> I did not give a thought to whether the court's orders concerning these motions were due within 30 days after the matters were taken under advisement. If I was ever aware of 18 U.S.C. § 3161(h)(1)(H), I had long since forgotten about it . . . I have never seen an issue raised under 18 U.S.C. § 3161(h)(1)(H).[4] It is not my practice to note the date that the court takes motions under advisement, or to mark my calendar to ensure that any decision is returned within 30 days of that date. I have canvassed the other attorneys who have practiced in this district for several years, specifically AUSA Fred Black and AUSA Marivic David.[5]

---

[3] Counsel states that "[t]he delay was not occasioned by the government. It is doubtful that Mr. Henderson, who had been employed in the federal system less than a year, was even aware of §3161(h)(1)(H). If [defense counsel] was aware of this provision, he did nothing to bring it to the court's attention. The errors appear to be a failure in the court's 'tickler' system, an inadvertent rather than deliberate oversight." Docket No. 118, p. 9:18-22. Clearly there was a dereliction of duty if the Government failed to train AUSA Henderson of the Speedy Trial Act once he was hired.

The court notes that shortly after the hearing on this matter, Government counsel filed a Supplemental Memorandum indicating that the Government indeed shares responsibility with the court in moving cases. *See* Docket No. 140.

[4] The substance of Title 18 U.S.C. § 3161(h)(1)(H) had been enacted on January 3, 1975 under the Speedy Trial Act of 1974. The substance of the section has remained constant, although the section denoting the provision has changed. When the statute was originally enacted the provision was found under § 3161(H)(1)(g). *See* Speedy Trial Act of 1974, Pub. L. No. 93-619 (S 754) (codified as 18 U.S.C. §§ 3161-74).

When the court questioned counsel if she was aware of when § 3161(h)(1)(H) was enacted she stated that she had "no idea." She claimed that the Speedy Trial Act was "complicated" and that she did not know it all.

[5] Mr. Black served as acting U.S. Attorney for over ten years, and Ms. David formerly was the acting first assistant, with over ten years of experience. At the hearing, when asked whether Government counsel stood by her representations in her Affidavit (including statements concerning Mr. Black and Ms. David), she replied "absolutely." (At the hearing, Government counsel also admitted that in this instance she was incompetent in applying the Act.) It is troubling that veteran lawyers purportedly were unaware of this provision and their duty to

Neither was aware of 18 U.S.C. § 3161(h)(1(H); neither keeps track of the time it takes the court to make a decision on motions. None of us have ever been faced with this issue.

Docket No. 132, Affidavit, ¶ 5.

The court is disturbed by counsel's cavalier attitude evidenced by her flippant remark that if she ever knew about § 3161(h)(1)(H), she had "long forgotten" it. *See* Docket No. 132, Affidavit, ¶ 5. The Government's own manual directs its attorneys to comply with the Act. Chapter 9-17.000 ("Speedy Trial Act of 1974) of Title 9 ("Criminal") of the current edition of the *United States Attorneys' Manual* states: "Government attorneys should comply with the time limits established by the act." With respect to pretrial motions, Chapter 9-17.000 ("Speedy Trial Act of 1974) of Title 9 ("Criminal") of the current edition of the *United States Attorneys' Manual* refers to "Criminal Resources Manual at 628" which specifically discusses the effect of such motions. The Criminal Resources Manual at 628 states:

> Certain pretrial delays are automatically excluded from the Act's time limits, such as delays caused by pretrial motions. 18 U.S.C. § 3161(h)(1)(F). In *Henderson v. United States*, 476 U.S. 321, 330 (1986), the Supreme Court held that § 3161(h)(1)(F) excludes "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" The Act also *excludes a reasonable period (up to 30 days)* during which a motion is actually "under advisement" by the court. 18 U.S.C. § 3161 (h)(1)(J) (emphasis added).

It is clear that the U.S. Attorney's office and its lawyers should have been aware of their responsibility in ensuring the Speedy Trial Act is not violated. Admittedly, they have failed. On one hand, the violation may be viewed as an isolated, unwitting violation since there have not been any other challenges of this type in the past. *Taylor*, 487 U.S. at 339 (stating that an "isolated unwitting violation" of the Act favors dismissal without prejudice.). Yet on the other hand, the evidence strongly suggests that there has been a continuing neglectful attitude on the part of the Government.

> [Defense counsel] MR. TRAPP: . . . And so. . . . Ms. Johnson [Government counsel] came into the case before the Speedy Trial Act ran and she

---

ensure that defendants are brought to trial in accordance with the Speedy Trial Act. The court is left with a strong impression that the U.S. Attorney's Office is in need of critical training concerning the Speedy Trial Act.

seems to have been aware, I don't know how far back, aware of this as a District Court of Guam problem of some kind and–

THE COURT: Well, that really bothers me if that's true, because that just shows bad faith on her part if that's true, what you're saying is true. That's very disturbing.

MR. TRAPP: Yes, we have said we questioned the prosecutor's good faith. We've said that in our brief, Your Honor . . . .

Now, what is the effect on the administration of justice? Well, if the government can just ignore things like this, knowingly let this all go by, and it so easy to remedy like while it was under advisement by Your Honor, if the court had been advised in time, could have made a section (h)(7) finding, zap, and as the case is now, that would have solved the problem. . . . And a lot of it I know seems very technical . . . . but . . . that's the situation; it would have been so easy to remedy. . . .

THE COURT: Well it could have been easy to remedy if the prosecutor knew that Judge Manibusan was 76 days later making a decision at the 29th day, I think [it] would have been incumbent at least at that very latest [time] to bring that to Judge Manibusan's attention.

MR. TRAPP: It could have been but we now have . . . [Ms. Johnson's] argument where she says that she doubts that Mr. Henderson even knew about it, but I'm saying well, so what–

THE COURT: That's not good either. Ms. Johnson's arguing that her fellow lawyer who was employed with the federal system less than a year was not even aware of the speedy trial law. That's like saying they are incompetent.

. . . .

. . . . That's not good.

Docket No. 128, Transcript of Hearing, p. 17:4-18:24 and p. 18:8-24 (May 2, 2011).

In her Affidavit, Government counsel admits:

We discussed the impact defendant's motion to dismiss might have on the court, because it appeared that the court had committed the error and this motion would not be well received. I told Mr. Trapp it was a good thing that he was bringing this issue to the court's attention. I said that I had become increasingly concerned about how long it was taking cases to get to trial. It seemed to me that there were endless delays and continuances for reasons that, to me, did not appear sufficiently justified. I said that even a simple case was taking up to two years to get to trial.[6]

---

[6] Counsel contradicts herself by stating further "[i]f I were concerned about a speedy trial violation, or indeed any other problem, I would bring that matter to the attention of the court and opposing counsel." Docket No. 132, Affidavit, ¶ 11. Counsel never raised any such issue with the court in this case or any other case.

Docket No. 132, Affidavit, ¶ 9. If such was counsel's belief, it was incumbent upon her to address the court of her concerns.

The right to a speedy trial belongs to both the criminal defendant and society as a whole. Thus, the Government and the courts "share[ ] the responsibility for speedy trial enforcement." *See United States v. Perez-Reveles*, 715 F.2d 1348, 1353 (9th Cir.1983). "Congress clearly intended that the courts and the government, not the defendant, assume primary responsibility for ensuring that criminal trials proceed expeditiously." *United States v. Pollock*, 726 F.2d 1456, 1464 (9th Cir. 1984).

The court readily admits that it bears responsibility in ensuring the Speedy Trial clock is upheld, but, ultimately the onus is on the Government to prosecute cases. By failing to track the number of days that have run under 18 U.S.C. § 3161(h)(1)(H) of the Speedy Trial Act, the Government has fallen short of its responsibilities under the Act. *See Taylor*, 487 U.S. at 338 (observing that "[w]e do not dispute that a truly neglectful attitude on the part of the Government reasonably could be factored against it in a court's consideration" of whether to dismiss with or without prejudice).[7]

While the court agrees with Government counsel that there is no evidence of bad faith on behalf of the Government or of a deliberate attempt to flout the Speedy Trial Act, there is evidence of an extremely lax attitude and lack of awareness regarding the Act. As noted, Government counsel admits that she and her colleagues were unaware of §3161(h)(1)(H); they

---

Since this court's appointment to the federal bench, the court has presided over 24 out of 29 trials. Seventy-seven continuances were granted. Government counsel prosecuted 16 of the 29 cases. Counsel did not object to any of the continuances; in fact she agreed to some of them. At the hearing, Government counsel again represented that she had concerns regarding the time it took to take cases to trial. However, when the court pressed counsel further, she was unable to point to any other recent examples of Speedy Trial violations. Instead she lamented over a case she prosecuted fifteen years ago involving a Speedy Trial Act violation resulting from a change in defense counsel.

[7] While the Clerk of the District Court carefully monitors compliance with the Speedy Trial Act, the U.S. Attorney Office is not relieved of its own responsibility. The U.S. Attorney's Office risks failure in discharging that responsibility when there is no effort on its part to monitor compliance.

never kept track of the time it takes the court to make a decision on motions: and that she had concerns about continuances that would not withstand judicial scrutiny. *See* Docket No. 132. However, she never addressed those concerns with the court. These considerations, together with other evidence presented, signify a continuing neglectful, careless attitude, rather than an isolated, unwitting violation of the Speedy Trial Act.

### C. *Impact of Reprosecution on the Administration of Justice*

The third factor the court must consider is the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. "[T]he public has as great an interest in a prompt criminal trial as has the defendant. Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'" *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995) (citation omitted).

As an initial matter, this factor cannot be viewed in isolation from the others. Whether a dismissal without prejudice will have an adverse impact on the administration of the Act or on the administration of justice depends, in large part, on the seriousness of the Defendant's alleged crime and on the reasons for the delay. A court may take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices in determining the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Taylor*, 487 U.S. at 338.

As previously discussed, the court finds that there is a "lackadaisical attitude" on the part of the Government. To allow reprosecution by dismissing without prejudice could be perceived as condoning the Government's neglectful behavior. As the Supreme Court noted in *Taylor*, "dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Taylor*, 487 U.S. at 342; *see also Clymer*, 25 F.3d at 832 ("[W]e believe that the Act's most severe sanction is appropriate where the surrounding circumstances lead us to conclude that district courts and United States Attorneys' offices have failed to recognize or implement our long-standing precedents."). Dismissal with prejudice creates the expectation that Government attorneys will

be more attentive to detail so as to avoid Speedy Trial Act violations, while at the same time being mindful of the overall effect of prosecutorial policies and procedures on a defendant's statutory and constitutional rights. Accordingly, the impact of a reprosecution on the administration of justice and of the Act weighs in favor of dismissal with prejudice.

### D. Prejudice

Finally, the court is required to consider the prejudice that the Defendant suffered as a result of the pretrial delay. *Taylor*, 487 U.S. at 340-41. "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Id.* at 340. The Supreme Court has further noted:

> [I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Id*. (quotation marks and citations omitted). Actual prejudice is typically demonstrated in three ways: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (internal quotation marks and citations omitted). Although the Defendant claims he is prejudiced because he has been incarcerated over two years, he has not demonstrated that the delay has caused actual prejudice to his ability to prepare for trial. Nor has he claimed any disruption in his employment, strain of financial resources or overall anxiety he may have suffered.

In addition, the court notes that the Defendant did not assert his desire for a speedy trial. In fact, some of the delay is attributable to him. "A defendant who waits passively while the time runs has less claim to dismissal with prejudice than does a defendant who demands, but does not receive, prompt attention." *United States v. Fountain*, 840 F.2d 509, 513 (7th Cir. 1988). For example, his attorney requested a three-week continuance for the hearing on his motions to suppress evidence. *See* Docket No. 42. Counsel also stipulated with the Government to have additional time to file his written objections to the proposed report and recommendation. *See* Docket No. 51. He filed another stipulation requesting a six-week continuance to file his

objections. *See* Docket No. 54. Accordingly, this factor is a consideration in favor of permitting reprosecution.

**III. CONCLUSION**

In weighing the § 3162(a)(2) factors together, including the prejudice to the Defendant, the seriousness of the underlying offenses, the neglectful attitude of the Government over the course of Defendant's prosecution in this case and the impact of a reprosecution on the administration of justice and the Speedy Trial Act, the court is obliged to find that **DISMISSAL WITH PREJUDICE** is the appropriate sanction for the Government's violation of the Act.[8]

**SO ORDERED.**

**/s/ Frances M. Tydingco-Gatewood**
     **Chief Judge**
**Dated: Jun 08, 2011**

---

[8] When this motion came before the court initially, the court was prepared to dismiss the indictment without prejudice. However, once additional briefing was filed, in particular, Government counsel's Affidavit, (Docket No. 132) the court found it was left with no choice but to dismiss the motion with prejudice. During the hearings, Government counsel was adamant that she was vigilant about tracking the Speedy Trial Act. On this issue the court finds counsel's assurances disingenuous. Counsel admitted that she and her office were unaware of § 3161(h)(1)(H) and had no policy of tracking cases under the Speedy Trial Clock when § 3161(h)(1)(H) was at issue. *See* Docket No. 132, Affidavit.